McGREGOR W. SCOTT
United States Attorney
ROSS PEARSON
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900





Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MANUEL FELIX-RIVERA,<br><br>Defendant. | CASE NO. 2:19-CR-00139-KJM<br><br>PLEA AGREEMENT<br><br>DATE: September 9, 2019<br>TIME: 9:00 a.m.<br>COURT: Hon. Kimberly J. Mueller |

## I.     **INTRODUCTION**

### A.     **Scope of Agreement**

The Information in this case charges the defendant with a violation of 21 U.S.C. §§ 841(a)(1) and 846—Conspiracy to Distribute and Possess With Intent to Distribute Controlled Substances. This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

### B.     **Court Not a Party**

The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances concerning the criminal activities of defendant, including activities that may not have been charged in

1 the Information. The Court is under no obligation to accept any recommendations made by the
2 government, and the Court may in its discretion impose any sentence it deems appropriate up to and
3 including the statutory maximum stated in this plea agreement.

4      If the Court should impose any sentence up to the maximum established by the statute, the
5 defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all
6 of the obligations under this plea agreement. The defendant understands that neither the prosecutor,
7 defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will
8 receive.

9                      **II.     DEFENDANT'S OBLIGATIONS**

10     **A.     Guilty Plea**

11     The defendant will plead guilty to Count One of the Information:  Conspiracy to Distribute and
12 Possess With Intent to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846.
13 The defendant agrees that he is in fact guilty of these charges and that the facts set forth in the Factual
14 Basis For Plea attached hereto as Exhibit A are accurate.

15     The defendant agrees that this plea agreement will be filed with the Court and become a part of
16 the record of the case.  The defendant understands and agrees that he will not be allowed to withdraw his
17 plea should the Court not follow the government's sentencing recommendations.

18     The defendant agrees that the statements made by him in signing this Agreement, including the
19 factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by
20 the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a
21 guilty plea pursuant to this Agreement.  The defendant waives any rights under Rule 11(f) of the Federal
22 Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, to the extent that these
23 rules are inconsistent with this paragraph or with this Agreement generally.

24     **B.     Waiver of Indictment**

25     The defendant acknowledges that under the United States Constitution he is entitled to be
26 indicted by a grand jury on the charges to which he is pleading guilty.  However, pursuant to
27 Fed.R.Crim.P. 7(b) the defendant agrees to waive any and all rights he has to being prosecuted by way
28 of indictment to the charges set forth in the information.  The defendant agrees that at a time set by the

1 | Court, he will sign a written waiver of prosecution by Indictment and consent to proceed by Information
2 | rather than by Indictment.

3 | **C.    Sentencing Recommendation**

4 | The defendant and his counsel may recommend whatever sentence they deem appropriate.

5 | **D.    Special Assessment**

6 | The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering
7 | a check or money order payable to the United States District Court to the United States Probation Office
8 | immediately before the sentencing hearing.

9 | **E.    Defendant's Violation of Plea Agreement or Withdrawal of Plea**

10 | If the defendant, violates this plea agreement in any way, withdraws his plea, or tries to withdraw
11 | his plea, this plea agreement is voidable at the option of the government. The government will no longer
12 | be bound by its representations to the defendant concerning the limits on criminal prosecution and
13 | sentencing as set forth herein. One way a defendant violates the plea agreement is to commit any crime
14 | or provide any statement or testimony which proves to be knowingly false, misleading, or materially
15 | incomplete. Any post-plea conduct by a defendant constituting obstruction of justice will also be a
16 | violation of the agreement. The determination whether the defendant has violated the plea agreement
17 | shall be decided under a probable cause standard.

18 | If the defendant violates the plea agreement, withdraws his plea, or tries to withdraw his plea, the
19 | government shall have the right: (1) to prosecute the defendant on any of the counts to which he pleaded
20 | guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file
21 | any new charges that would otherwise be barred by this plea agreement. The defendant shall thereafter
22 | be subject to prosecution for any federal criminal violation of which the government has knowledge,
23 | including perjury, false statements, and obstruction of justice. The decision to pursue any or all of these
24 | options is solely in the discretion of the United States Attorney's Office.

25 | By signing this plea agreement, the defendant agrees to waive any objections, motions, and
26 | defenses that the defendant might have to the government's decision to exercise the options stated in the
27 | previous paragraph. Any prosecutions that are not time-barred by the applicable statute of limitations as
28 | of the date of this plea agreement may be commenced in accordance with this paragraph,

PLEA AGREEMENT                                              3

1   notwithstanding the expiration of the statute of limitations between the signing of this plea agreement
2   and the commencement of any such prosecutions.  The defendant agrees not to raise any objections
3   based on the passage of time with respect to such counts including, but not limited to, any statutes of
4   limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth
5   Amendment to any counts that were not time-barred as of the date of this plea agreement.

6        In addition: (1) all statements made by the defendant to the government or other designated law
7   enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal,
8   whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or
9   administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no
10  claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal
11  Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by
12  the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed.
13  By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

14              **III.    THE GOVERNMENT'S OBLIGATIONS**

15       **A.    Recommendations**

16              1.    Incarceration Range

17       The government will recommend that the defendant be sentenced to the low end of the
18  applicable guideline range for his offense, including the application of the mandatory statutory minimum
19  term, as determined by the Court.  The government may recommend whatever it deems appropriate as to
20  all other aspects of sentencing.

21              2.    Acceptance of responsibility

22       The government will recommend a two-level reduction (if the offense level is less than 16) or a
23  three-level reduction (if the offense level reaches 16) in the computation of defendant's offense level if
24  he clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G. § 3E1.1.
25  This includes the defendant meeting with and assisting the probation officer in the preparation of the
26  pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in
27  conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the
28  preparation of the pre-sentence report or during the sentencing proceeding.

PLEA AGREEMENT                              4

3.  Statutory and Guidelines Safety Valve

The government agrees that the defendant satisfies the criteria set forth in 18 U.S.C. § 3553(f)(2)–(5), the statutory safety valve, and U.S.S.G. § 5C1.2(a)(2)–(5). The government agrees not to seek a role enhancement for the defendant.

**B.    Use of Information for Sentencing**

The government is free to provide full and accurate information to the Court and the United States Probation Office ("Probation"), including answering any inquiries made by the Court and/or Probation, and rebutting any inaccurate statements or arguments by the defendant, his attorney, Probation, or the Court. The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

## IV.    ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense to which the defendant is pleading guilty:

As to Count One, Conspiracy to Distribute and Possess With Intent to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846:

1.  Beginning on or about September 13, 2018, and ending on or about March 13, 2019, there was an agreement between two or more persons to distribute and to possess with intent to distribute controlled substances, including fentanyl, methamphetamine, heroin, and cocaine; and

2.  The defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

"To distribute" means to deliver or transfer possession of a controlled substance to another person, with or without any financial interest in that transaction. To "possess with intent to distribute" means to possess with intent to deliver or transfer possession of a controlled substance to another person, with or without any financial interest in the transaction.

The defendant fully understands the nature and elements of the crimes charged in the Information to which he is pleading guilty, together with the possible defenses thereto, and has

PLEA AGREEMENT                                          5

1 | discussed them with his attorney.

2 | **V.    MAXIMUM SENTENCE**

3 | **A.    Maximum penalty**

4 | The maximum sentence that the Court can impose is lifetime incarceration, a fine of
5 | $10,000,000, a term of supervised release of at least five years and up to lifetime supervised release, and
6 | a special assessment of $100. The charge to which defendant is pleading guilty carries a ten-year
7 | mandatory minimum sentence, absent a motion by the government for reduction pursuant to 18 U.S.C. §
8 | 3553(e). In addition, the defendant may be ineligible for certain federal and/or state assistance and/or
9 | benefits, pursuant to 21 U.S.C. § 862.

10 | **B.    Violations of Supervised Release**

11 | The defendant understands that if he violates a condition of supervised release at any time during
12 | the term of supervised release, the Court may revoke the term of supervised release and require the
13 | defendant to serve up to five years of additional imprisonment.

14 | **VI.    SENTENCING DETERMINATION**

15 | **A.    Statutory Authority**

16 | The defendant understands that the Court must consult the Federal Sentencing Guidelines and
17 | must take them into account when determining a final sentence. The defendant understands that the
18 | Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the
19 | Sentencing Guidelines and must take them into account when determining a final sentence. The
20 | defendant further understands that the Court will consider whether there is a basis for departure from the
21 | guideline sentencing range (either above or below the guideline sentencing range) because there exists
22 | an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into
23 | consideration by the Sentencing Commission in formulating the Guidelines. The defendant further
24 | understands that the Court, after consultation and consideration of the Sentencing Guidelines, must
25 | impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

26 | **B.    Sentencing Recommendation**

27 | The defendant is free to recommend to the Court whatever sentence he believes is appropriate
28 | under 18 U.S.C. § 3553(a). The government will recommend that the defendant be sentenced to the low

1  end of the applicable guideline range for his offense, including the application of the mandatory
2  statutory minimum term, as determined by the Court.

## VII.    WAIVERS

### A.    Waiver of Constitutional Rights

5  The defendant understands that by pleading guilty he is waiving the following constitutional
6  rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to
7  be assisted at trial by an attorney, who would be appointed if necessary; (d) to pursue any affirmative
8  defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statutes of
9  conviction, and other pretrial motions that have been filed or could be filed; (e) to subpoena witnesses to
10  testify on his behalf; (f) to confront and cross-examine witnesses against him; and (g) not to be
11  compelled to incriminate himself.

### B.    Waiver of Appeal and Collateral Attack

13  The defendant understands that the law gives the defendant a right to appeal his guilty plea,
14  conviction, and sentence. The defendant agrees as part of his plea/pleas, however, to give up the right to
15  appeal any aspect of the guilty plea, conviction, or sentence imposed in this case. The defendant
16  understands that this waiver includes, but is not limited to, any and all constitutional and/or legal
17  challenges to the defendant's conviction and guilty plea, including arguments that the statutes to which
18  defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts
19  attached to this agreement is insufficient to support the defendant's plea of guilty. The defendant
20  specifically gives up the right to appeal any order of restitution the Court may impose.

21  Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if
22  one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the
23  statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant
24  understands that these two circumstances occur infrequently and that in all other cases this Agreement
25  constitutes a complete waiver of all appellate rights.

26  In addition, regardless of the sentence the defendant receives, the defendant also gives up any
27  right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any
28  aspect of the guilty plea, conviction, or sentence imposed in this case.

PLEA AGREEMENT                                            7

1    If the defendant ever attempts to vacate his plea, dismiss the underlying charges, or modify or set
2    aside his sentence on any of the counts to which he is pleading guilty, the government shall have the
3    rights set forth in paragraph II.E (Defendant's Violation of Plea Agreement) herein.

### C.   Impact of Plea on Defendant's Immigration Status

5    Defendant recognizes that pleading guilty may have consequences with respect to his
6    immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes
7    are removable offenses, including offense(s) to which the defendant is pleading guilty. The defendant
8    and his counsel have discussed the fact that the charge to which the defendant is pleading guilty is an
9    aggravated felony, or a crime that is likely to be determined to be an aggravated felony under 8 USC §
10   1101(a)(43), and that while there may be arguments that defendant can raise in immigration proceedings
11   to avoid or delay removal, it is virtually certain that defendant will be removed. Indeed, because
12   defendant is pleading guilty to Conspiracy to Distribute and to Possess with Intent to Distribute
13   Controlled Substances, removal is presumptively mandatory. Removal and other immigration
14   consequences are the subject of a separate proceeding, however, and defendant understands that no one,
15   including his attorney or the district court, can predict to a certainty the effect of his conviction on his
16   immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any
17   immigration consequences that his plea may entail, even if the consequence is his automatic removal
18   from the United States.

### VIII.   ENTIRE PLEA AGREEMENT

20   Other than this Plea Agreement, no agreement, understanding, promise, or condition between the
21   government and the defendant exists, nor will such agreement, understanding, promise, or condition
22   exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and
23   counsel for the United States.

### IX.   APPROVALS AND SIGNATURES

### A.   Defense Counsel

26   I have read this plea agreement and have discussed it fully with my client. The plea agreement
27   accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to
28   plead guilty as set forth in this plea agreement.

1

**EXHIBIT "A"**
**Factual Basis for Plea**

2

3     If this matter proceeded to trial, the United States would establish the following facts beyond a
reasonable doubt and the defendant agrees these facts are true:

4     From September 2018 through March 13, 2019, defendant Manuel FELIX-RIVERA knowingly
agreed with other co-conspirators to distribute controlled substances, including fentanyl,
5    methamphetamine, heroin, and cocaine. As described in further detail below, during the course of the
conspiracy, FELIX-RIVERA arranged to distribute fentanyl to a confidential source (CS1) with the
6    Drug Enforcement Administration (DEA) five times. DEA Agents subsequently obtained a search
warrant for FELIX-RIVERA's residence and found fentanyl, methamphetamine, heroin, and cocaine.
7    Each of the events occurred in Stockton, San Joaquin County, in the State and Eastern District of
California.

8

### A.     On September 13, 2018, FELIX-RIVERA sold approximately 49.7 grams of fentanyl
9    to CS1 for $3,000.

10    In the days prior to September 13, 2018, CS1 negotiated a two-ounce fentanyl purchase from
FELIX-RIVERA. On September 13, 2018, under the direction and control of DEA, CS1 conducted a
11    controlled fentanyl purchase.

12    In the morning of September 13, 2018, investigators watched FELIX-RIVERA leave 3273 Juliet
Road in Stockton, California (Premises 2), walk over to a vehicle, and get inside. FELIX-RIVERA then
13    drove about 1.5 miles to 2144 South Ash Street in Stockton, California (Premises 1).

14    There, FELIX-RIVERA parked his vehicle and manually opened the front metal gate that
restricts access to the driveway. Next, FELIX-RIVERA pulled his vehicle into the driveway, parked,
15    got out, and walked behind the main residence, out of view of investigators. Inside, FELIX-RIVERA
picked up the fentanyl that he was planning on selling to CS1.

16

17    About 30 minutes later, FELIX-RIVERA emerged back into view, got into his vehicle, reversed
it, and traveled directly to the deal location where CS1 was already waiting.

18    During the transaction, CS1 met with FELIX-RIVERA at a commercial parking lot located at
10342 Trinity Parkway, Stockton, California. CS1 got out of his/her vehicle and entered the front
19    passenger seat of FELIX-RIVERA's vehicle. Inside, CS1 paid FELIX-RIVERA $3,000.00 for about
119.1 gross grams of a fentanyl mixture. A few moments later, CS1 got out of Vehicle 1 and returned to
20    his/her vehicle.

21    The fentanyl that FELIX-RIVERA sold CS1 was later tested at the DEA Western Regional
Laboratory. The substance weighed 49.7 grams and it tested positive for fentanyl.

22

23

### B.     On September 25, 2018, FELIX-RIVERA sold approximately 74.2 grams of fentanyl
to CS1 for $4,500.

24

    In the days leading up to September 25, 2018, FELIX-RIVERA and CS1 negotiated for FELIX-
25    RIVERA to sell three ounces of fentanyl to CS1. On the day of the deal, FELIX-RIVERA left Premises
2, walked to his car, and drove to Premises 1. He got out of his car and went inside the property. Inside,
26    FELIX-RIVERA picked up the fentanyl that he was planning on selling to CS1.

27    About 13 minutes later, FELIX-RIVERA came out of Premises 1, got in his car, and drove to a
commercial shopping center where CS1 was waiting. CS1 got out of his/her car and got into the front
28    passenger seat of FELIX-RIVERA's vehicle. There, CS1 paid **FELIX-RIVERA** $4,500 for about 150

PLEA AGREEMENT                                   A-1

1 | gross grams of a mixture containing fentanyl.

2 |     The fentanyl that FELIX-RIVERA sold CS1 was later tested at the DEA Western Regional Laboratory. The substance weighed 74.2 grams and it tested positive for fentanyl.

3

### C. On October 25, 2018, FELIX-RIVERA sold approximately 74.8 grams of fentanyl to CS1 for $4,500.

4

5 |     On October 24, 2018, CS1 called FELIX-RIVERA and FELIX-RIVERA offered to sell CS1 three ounces of fentanyl. The next day, FELIX-RIVERA left Premises 2, get in his car, and drive to Premises 1. FELIX-RIVERA parked his car, went inside to pick up the fentanyl, and then came back to his car.

6

7 |     FELIX-RIVRA drove to the location of the deal, in Stockton, California, where CS1 was waiting. CS1 got into FELIX-RIVERA's vehicle and FELIX-RIVERA sold CS1 about 144 gross grams of fentanyl for $4,500.

8

9

10 |     The fentanyl that FELIX-RIVERA sold CS1 was later tested at the DEA Western Regional Laboratory. The substance weighed 74.8 grams and it tested positive for fentanyl.

11

### D. On November 29, 2018, FELIX-RIVERA sold approximately 49.9 grams of fentanyl to CS1 for $3,000.

12

13 |     In the days prior to November 29, 2018, FELIX-RIVERA agreed to sell two ounces of fentanyl to CS1. The day of the transaction, CS1 met with FELIX-RIVERA at a community park in Stockton, California. CS1 got in FELIX-RIVERA's vehicle, and FELIX-RIVERA handed him approximately 121 gross grams of fentanyl. CS1 paid FELIX-RIVERA $3,000 for the fentanyl.

14

15 |     The fentanyl that FELIX-RIVERA sold CS1 was later tested at the DEA Western Regional Laboratory. The substance weighed 49.9 grams and it tested positive for fentanyl.

16

### E. On December 3, 2018, Robert Phillips purchased approximately 30 grams of fentanyl from FELIX-RIVERA.

17

18 |     On December 3, 2018, DEA Agents saw FELIX-RIVERA drive to Premises 1, where he had previously picked up fentanyl on multiple occasions, then later drive to a commercial parking lot in Stockton, California. FELIX-RIVERA met with Robert Phillips. Phillips got inside FELIX-RIVERA's vehicle, where FELIX-RIVERA handed Phillips fentanyl.

19

20

21 |     Phillips got out of FELIX-RIVERA's vehicle and drove away. Agents followed Phillips and eventually stopped him while he was driving. Officers eventually searched Phillips, and found that in his pants he had approximately 30 grams of fentanyl, which he had purchased from FELIX-RIVERA.

22

23

### F. On March 13, 2019, DEA agents searched FELIX-RIVERA's residence and stash house and found 4 kilograms of black tar heroin, 1.2 kilograms of fentanyl, 1.1 kilograms of cocaine, and 1.1 kilograms of crystal methamphetamine.

24

25 |     On March 13, 2019, DEA agents searched FELIX-RIVERA's vehicles, his residence, and his stash house (Premises 1), all in Stockton, California. At Premises 1, they found 4 kilograms of black tar heroin; 1.2 kilograms of a mixture containing fentanyl; 1.1 kilograms of cocaine; and 1.1 kilograms of crystal methamphetamine. These items were located in the same building within Premises 1 that FELIX-RIVERA had been seen going into before each transaction at which he sold CS1 fentanyl.

26

27

28 |     That day, FELIX-RIVERA was arrested, read his Miranda rights, and interviewed. FELIX-

1

2   Dated: _____9-3-19_____                    _David W. ____, co-counsel with_
                                               VICTOR SHERMAN
3                                              Counsel for Defendant

4       **B.    Defendant**

5           I have read this plea agreement and carefully reviewed every part of it with my attorney.  I

6   understand it, and I voluntarily agree to it.  Further, I have consulted with my attorney and fully

7   understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my

8   case.  No other promises or inducements have been made to me, other than those contained in this plea

9   agreement.  In addition, no one has threatened or forced me in any way to enter into this plea agreement.

10  Finally, I am satisfied with the representation of my attorney in this case.

11
    Dated: _9 / 03 / 19_                       _MANUEL FELIX_
12                                             MANUEL FELIX-RIVERA,
                                               Defendant
13

14      **C.    Court Certified Interpreter/Translator**

15          I declare that I am a court-certified Spanish-English interpreter/translator.  On

16  _9 / 3 / 19_, I read the entire contents of the foregoing plea agreement to MANUEL FELIX-

17  RIVERA, translating the document from English to Spanish.

18
    Dated: _9 / 3 / 19_                        _Gior White_
19                                             Interpreter/Translator

20

21      **D.    Attorney for the United States**

22          I accept and agree to this plea agreement on behalf of the government.

23  Dated: _9 / 9 / 19_                         McGREGOR W. SCOTT
                                                United States Attorney
24

25                                          By: _____
26                                              ROSS PEARSON
                                                Assistant United States Attorney
27

28

    PLEA AGREEMENT                              9

RIVERA admitted that the building at Premises 1 where these controlled substances were found was his, and that he rented it out. He told agents that this location was the only place where he stored controlled substances, and he estimated that the residence currently held a couple of pounds of heroin, one kilogram of fentanyl, about one kilogram of cocaine, and a smaller amount of methamphetamine. He also confirmed that he had received a delivery two pounds of heroin from a woman that morning, and that he had received other shipments of controlled substances previously from his source(s) of supply.

Dated: 9/03/19

MANUAL FELIX-RIVERA,
Defendant

PLEA AGREEMENT

A-3